UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MARCIA AUGUSTINE on behalf of J.R.,)    No. EDCV 09-0974-RC
                                    )
          Plaintiff,                )
                                    )    OPINION AND ORDER
     v.                             )
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
          Defendant.                )
_____)

     Plaintiff J.R., through her mother Marcia Augustine, filed a
complaint on June 2, 2009, seeking review of the Commissioner's
decision denying her application for disability benefits.  On
October 16, 2009, the Commissioner answered the complaint, and the
parties filed a joint stipulation on December 30, 2009.

                            **BACKGROUND**

     The plaintiff, who was born on July 7, 1997, is now 13 years old.
A.R. 51, 55, 164.  On May 19, 2004, plaintiff's mother filed an
application on plaintiff's behalf for disability benefits under the
Supplemental Security Income ("SSI") program of Title XVI of the

1   Social Security Act, 42 U.S.C. § 1382(a), claiming plaintiff has been
2   disabled since January 1, 2002, due to attention deficit hyperactivity
3   disorder ("ADHD") and depression.  A.R. 51-54, 71.  The Social
4   Security Administration found plaintiff was not disabled, and on
5   August 16, 2006, plaintiff filed a complaint seeking review of that
6   decision, Augustine v. Astrue, EDCV 06-0903-RC ("Augustine I").[1]  On
7   January 17, 2008, this Court granted plaintiff's request for relief
8   and Judgment was entered remanding Augustine I to the Social Security
9   Administration, pursuant to sentence four of 42 U.S.C. § 405(g).
10  Augustine v. Astrue, 536 F. Supp. 2d 1147 (C.D. Cal. 2008); A.R. 195-
11  205.  The Appeals Council, in turn, remanded the matter for further
12  administrative proceedings, A.R. 206-08, and on January 7, 2009,
13  Administrative Law Judge F. Keith Varni ("ALJ") held a new
14  administrative hearing.  A.R. 348-64.  On March 5, 2009, the ALJ
15  issued a decision again finding plaintiff is not disabled, A.R. 176-
16  88, and that decision is now before this Court for review.

17
18                            **DISCUSSION**
19                                **I**
20       The Court, pursuant to 42 U.S.C. § 405(g), has the authority to
21  review the Commissioner's decision denying plaintiff disability
22  benefits to determine if his findings are supported by substantial
23  evidence and whether the Commissioner used the proper legal standards
24  in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th
25  Cir. 2009); Merrill v. Apfel, 224 F.3d 1083, 1084-85 (9th Cir. 2000).

26
27
          [1]  Pursuant to Fed. R. Evid. 201, this Court takes judicial
28  notice of relevant documents in Augustine I.

                                   2

1    A minor is "disabled" for purposes of the SSI program if she "has

2   a medically determinable physical or mental impairment, which results

3   in marked and severe functional limitations, and which can be expected

4   to result in death or which has lasted or can be expected to last for

5   a continuous period of not less than 12 months."  42 U.S.C.

6   § 1382c(a)(3)(C)(i); Merrill, 224 F.3d at 1085.  "The claimant bears

7   the burden of establishing a prima facie case of disability."  Roberts

8   v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S.

9   1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

10

11    The Commissioner has promulgated regulations establishing a

12   three-step sequential evaluation process to follow when considering

13   the disability application of a minor.  20 C.F.R. § 416.924.  In the

14   **First Step**, the ALJ must determine whether the claimant is currently

15   engaged in substantial gainful activity; if so, a finding of

16   nondisability is made and the claim is denied.  20 C.F.R.

17   § 416.924(b).  If the claimant is not currently engaged in substantial

18   gainful activity, in the **Second Step**, the ALJ must determine whether

19   the claimant has a severe medically determinable impairment or

20   combination of impairments; if not, a finding of nondisability is made

21   and the claim is denied.  20 C.F.R. § 416.924(c).  If the claimant

22   has a severe impairment, in the **Third Step**, the ALJ must determine

23   whether the claimant's impairment meets or medically or functionally

24   equals an impairment in the Listing of Impairments ("Listing"),

25   20 C.F.R. § 404, Subpart P, App. 1, and if the claimant's impairment

26   meets or equals an impairment in the Listing, and meets the durational

27   requirement, disability is presumed and benefits are awarded;

28   otherwise, a finding of nondisability is made and the claim is denied.

1 | 20 C.F.R. § 416.924(d).

2

3 | Applying the three-step sequential evaluation process, the ALJ
4 | found plaintiff has not engaged in substantial gainful activity at any
5 | relevant time.  (Step One).  The ALJ then found plaintiff has ADHD and
6 | an unspecified depressive disorder, which are severe impairments.
7 | (Step Two).  Finally, the ALJ concluded plaintiff does not have an
8 | impairment or combination of impairments that meets or equals a
9 | Listing; therefore, plaintiff is not disabled.  (Step Three).

10

11 |                                 II

12 | The mere diagnosis of a listed impairment is insufficient, in
13 | itself, to support a finding of disability; rather, the claimant also
14 | must have the findings shown or symptoms detailed in the listing of
15 | that impairment.  20 C.F.R. § 416.925(d); Young v. Sullivan, 911 F.2d
16 | 180, 183 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549 (9th
17 | Cir. 1985).  "To equal a listed impairment, a claimant must establish
18 | symptoms, signs and laboratory findings 'at least equal in severity
19 | and duration' to the characteristics of a relevant listed impairment,
20 | or, if a claimant's impairment is not listed, then to the listed
21 | impairment 'most like' the claimant's impairment."  Tackett v. Apfel,
22 | 180 F.3d 1094, 1099 (9th Cir. 1999) (citation omitted); Howard v.
23 | Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

24

25 | Even if an impairment does not meet the requirements of, or is
26 | not medically equal to, a listed impairment, the claimant may be
27 | disabled if her impairment or combination of impairments is
28 | functionally equivalent to a listed impairment.  20 C.F.R. § 416.926a;

Augustine, 536 F. Supp. 2d at 1151; Smith v. Massanari, 139 F. Supp. 2d 1128, 1135 (C.D. Cal. 2001).  Functional equivalence is measured by assessing the claimant's ability to function in terms of the following six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do":  (i) Acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i-vi).  An impairment or combination of impairments functionally equals a Listing if it results "in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain[.]"[2]  20 C.F.R. § 416.926a(a), (d).  In evaluating a claimant's ability to function in each domain, the ALJ should answer the following questions about whether the claimant's impairments affect her functioning, and whether the claimant's "activities are typical of other children [of the same] age who do not have impairments":  (1) What activities can the claimant perform? (2) what activities is the claimant unable to perform? (3) which of the claimant's activities are limited or restricted compared to other

_____

[2]  A limitation is "marked" if it "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities[,]" which "is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  20 C.F.R. § 416.926a(e)(2)(i).  A limitation is "extreme" if it "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities"; however, it "does not necessarily mean a total lack or loss of ability to function[;]" rather, "[i]t is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  20 C.F.R. § 416.926a(e)(3)(i).

children the claimant's age who do not have impairments? (4) where
does the claimant have difficulty with her activities – at home, in
child care, at school, or in the community? (5) does the claimant have
difficulty independently initiating, sustaining, or completing
activities? and (6) what kind of help does the claimant need to do her
activities, how much help is needed, and how often is help needed?  20
C.F.R. § 416.926a(b)(2)(i)-(vi).


    The ALJ found plaintiff does not meet or medically or
functionally equal any listed impairment since her severe mental
impairment does not impose any marked or extreme limitations.  A.R.
182-88.  With regard to the six functional equivalence domains, the
ALJ found plaintiff has: less than a marked limitation in acquiring
and using information; less than a marked limitation in attending and
completing tasks; less than a marked limitation in interacting and
relating with others; no limitation in moving about and manipulating
objects; less than a marked limitation in the ability to care for
herself; and no limitation in health and physical well-being.  A.R.
184-88.  The plaintiff, however, contends these findings are not
supported by substantial evidence because the ALJ failed to properly
consider:  (1) the opinions of her treating psychiatrist, M.L. Valdes,
M.D., as required by the Appeals Council's remand order; (2) a
teacher's questionnaire; and (3) plaintiff's mother's testimony.

**1.   Treating Psychiatrist's Opinion:**

    The medical opinions of treating physicians are entitled to
special weight because the treating physician "is employed to cure and
has a greater opportunity to know and observe the patient as an

1  individual." Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

2  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

3  1999).   Therefore, the ALJ must provide clear and convincing reasons

4  for rejecting the uncontroverted opinion of a treating physician, Ryan

5  v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Reddick

6  v. Chater, 157 F.3d 715, 725 (9th Cir. 1998), and "[e]ven if [a]

7  treating doctor's opinion is contradicted by another doctor, the ALJ

8  may not reject this opinion without providing 'specific and legitimate

9  reasons' supported by substantial evidence in the record." Reddick,

10  157 F.3d at 725; Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.

11  2008).

12

13      In Augustine I, this Court summarized Dr. Valdes's medical

14  assessment of plaintiff, as follows:

15

16      On March 16, 2005, Dr. Valdes examined plaintiff and

17      diagnosed her with ADHD, a depressive disorder, borderline

18      intellectual functioning and a learning disability,

19      determined plaintiff's Global Assessment of Functioning

20      ("GAF") to be 45[fn4] (highest past year 55),[fn5] and

21      prescribed medication.  A.R. 135, 152, 155.  In making

22      [this] assessment, Dr. Valdes noted plaintiff talks about

23      hurting herself, and plaintiff cannot get along with others,

24      cannot pay attention, cannot sit still, and cannot remember

25      things from one assignment to the next.  A.R. 135.  Dr.

26      Valdes found plaintiff's insight and judgment were poor, her

27      memory was good, and she was oriented times three.  A.R.

28      152.  On April 26, 2005, Dr. Valdes reported plaintiff's

initial response to medication was poor, and found plaintiff
cannot process authority, is hyper all day, and runs into
traffic.  A.R. 151.  On May 17, 2005, Dr. Valdes also noted
plaintiff cries a lot and does not want to go to school.
A.R. 151.  On July 12, 2005, Dr. Valdes opined the medi-
cation was now working, and plaintiff was calm and pleasant
and was learning to get along with other children.  A.R.
150.  On September 15, 2005, Dr. Valdes noted plaintiff's
grandmother was dying, and plaintiff was more depressed and
anxious, has made statements she wants to kill herself, has
started hitting herself, and is again not getting along with
other children.  A.R. 142.  On October 13, 2005, Dr. Valdes
reported plaintiff was doing well in school, but cries in
the morning and when she comes home from school.  A.R. 145.

[fn4]  A GAF of 45 means the individual exhibits "[s]erious
symptoms (e.g., suicidal ideation, severe obsessional
rituals, frequent shoplifting) or any serious impairment in
social, occupational, or school functioning (e.g. no
friends, unable to keep a job)."  American Psychiatric
Ass'n, Diagnostic and Statistical Manual of Mental
Disorders, 34 (4th ed. (Text Revision) 2000).

[fn5]  A GAF of 55 indicates "[m]oderate symptoms (e.g., flat
affect and circumstantial speech, occasional panic attacks)
or moderate difficulty in social, occupational, or school
functioning (e.g., few friends, conflicts with peers or co-
workers)."

1  Augustine, 536 F. Supp. 2d at 1152-53 n.4-5.  This Court then

2  determined "the ALJ's Step Three conclusion [was] not supported by

3  substantial evidence" because "the ALJ failed to discuss any of Dr.

4  Valdes's findings or opinions in his decision, and implicitly rejected

5  many of Dr. Valdes's opinions."  Id. at 1153.

6

7       Following remand, Dr. Valdes provided further medical records and

8  assessments.  A.R. 306-14, 324-38.  Among other things, these records

9  show that on August 31, 2007, Dr. Valdes examined plaintiff, who was

10 having tantrums once or twice a day, but less severe, and noted that

11 although she had a short attention and concentration span, her

12 appearance, mood, affect and speech were appropriate, her sleep and

13 appetite were okay, and she has responded well to medication.  A.R.

14 335.  On November 5, 2007, Dr. Valdes noted plaintiff gets depressed

15 occasionally, but was behaving better at home, her attention and

16 concentration were better with medication, and her appearance, affect

17 and speech were appropriate.  A.R. 333.  On January 15, 2008, Dr.

18 Valdes opined plaintiff was doing fair, she still had a short and

19 impaired attention and concentration span, and her appearance, mood,

20 affect and speech were still appropriate.  A.R. 328.  On February 28,

21 2008, Dr. Valdes diagnosed plaintiff as chronically learning disabled,

22 noted she has disorganized and ruminative thoughts, and found evidence

23 of depression, anxiety, inappropriate affect, compulsive behavior,

24 destructiveness, aggressiveness, and self-abuse, and Dr. Valdes opined

25 plaintiff's attitude was hostile, fearful and anxious; however, he

26 further found there is no psychosis, developmental delays or

27 abnormalities.  A.R. 325.  Dr. Valdes also opined plaintiff cannot

28 maintain a sustained level of concentration, follow and understand

1  simple instructions, adapt to new or stressful situations, or engage

2  in an age appropriate level of skills in self-care.  Id.

3

4      The ALJ rejected Dr. Valdes's opinions, stating:

5

6      I find the opinions of Dr. Valdes . . . are unpersuasive.

7      First of all they are unsupported by any mental status

8      examination which he has reported in his records or by any

9      testing which he has done or ordered, and they are based

10      solely on parent report.  The financial motivation for such

11      reports is obvious since the parent does not work and is

12      supported on SSI herself for what she said was a heart

13      condition.  The opinions are contrary to Dr. Valdes' records

14      which clearly show improvement and good response to

15      medications when properly adjusted.  Those opinions are also

16      thoroughly rebutted by the opinions of the State Agency

17      Board certified psychiatrists in both the initial case and

18      the interim filing, and by the actual findings and

19      conclusions of the psychological consultative examiner.

20      . . .

21

22  A.R. 183.

23

24      An ALJ may properly reject a treating or examining physician's

25  report that is inconsistent with the medical record.  Batson v. Comm'r

26  of the Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Morgan,

27  169 F.3d at 602.  Here, as the ALJ noted, Dr. Valdes's opinions are

28  contrary to that of examining psychologist Shirley Simmons, Ph.D., who

examined plaintiff on September 15, 2008, diagnosed her with an unspecified depressive disorder, and opined plaintiff was "mildly" limited in her ability to understand and remember simple or complex instructions, carry out complex instructions, and make judgments on simple or complex work-related decisions, but was otherwise not limited. A.R. 339-47. Additionally, Dr. Valdes's opinions are contrary to those of nonexamining psychiatrists M. Becraft, M.D., Michael Skopec, M.D., K.D. Gregg, M.D., and N. Haroun, M.D. A.R. 112-17, 119-24, 301-05, 317-22. "The contrary opinions of [the examining and nonexamining physicians] serve as . . . specific and legitimate reasons for rejecting the opinion[] of [the claimant's treating physician]," Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also Morgan, 169 F.3d at 602 ("Inconsistencies between [treating and examining physicians'] conclusions provided the ALJ additional justification for rejecting [treating physician's] opinion."), and support the ALJ's determination that plaintiff is not disabled. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Moreover, to the extent Dr. Valdes opined plaintiff cannot maintain a sustained level of concentration, follow and understand simple instructions, adapt to new or stressful situations, or engage in an age appropriate level of skills in self-care, A.R. 325, these opinions are contrary to Dr. Valdes's treatment notes, which indicate plaintiff was improving and her mental status was generally appropriate. A.R. 148, 150, 314, 328, 333, 335-36. Therefore, this was also a specific and legitimate reason for rejecting Dr. Valdes's

//

11

opinions.[3] <u>Tommasetti</u>, 533 F.3d at 1041; <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003).

### 2.   Teacher:

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>Valentine v. Comm'r, Soc. Sec. Admin.</u>, 574 F.3d 685, 694 (9th Cir. 2009).  Thus, third party statements are competent evidence, and "an important source of information about a claimant's impairments[.]" <u>Regennitter v. Comm'r of the Soc. Sec. Admin.</u>, 166 F.3d 1294, 1298 (9th Cir. 1999); <u>Schneider v. Comm'r of the Soc. Sec. Admin.</u>, 223 F.3d 968, 975 (9th Cir. 2000); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1289 ("[T]estimony from lay witnesses who see the claimant every day is of particular value. . . .").

On September 7, 2006, Paul Huff, plaintiff's fourth-grade teacher for math, social studies, and science, completed a questionnaire stating:  plaintiff "seems to have problems processing oral and written instructions"; she "has difficulty following step[-]by[-]step instructions when completing math problems"; class discussions "seem to move to[o] quickly for her"; she "seems 'zoned out'" and possibly over-medicated; she struggles completing homework and it is obvious

---

[3]   Having concluded the reasons discussed herein provide a specific and legitimate basis for the ALJ's rejection of Dr. Valdes's opinions, the Court need not address the other reasons the ALJ provided for his rejection of Dr. Valdes's opinions.

she does not get much support at home; and she "tries hard to complete assignments in class, but assignments that are handed in on time are of low quality." A.R. 201-08.  Mr. Huff also opined plaintiff has no observed problems interacting and relating with others or caring for herself.  A.R. 294-96.  Mr. Huff concluded:

> It is my personal and professional assessment that [plaintiff] needs a more stable and nurturing home environment.  It is difficult to pass judgements this early in the year.  [Plaintiff] seems to want attention and companionship from peers and myself but doesn't try and get it in any negative ways.  She constantly wants to help me around the classroom and truly tries to do her best. . . . [S]he seems to be in an almost "zombie"[-]like state where she is slow to process information and directions.  [Plaintiff] has great behavior and a desire to [do] well in school, however[,] I think she lacks [the] basic skill to do so.

A.R. 298.

Here, the ALJ failed to discuss Mr. Huff's opinions, which was legal error.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Schneider, 223 F.3d at 975.  Nevertheless, such error was harmless since Mr. Huff's opinions do now show plaintiff is disabled or has any limitations the ALJ did not find.[4]  See

---

[4]  Indeed, nonexamining psychiatrist Dr. Haroun relied on Mr. Huff's opinions in evaluating plaintiff, and, as discussed

1    <u>Tommasetti</u>, 533 F.3d at 1038 ("The court will not reverse an ALJ's

2    decision for harmless error, which exists when it is clear from the

3    record that the ALJ's error was inconsequential to the ultimate

4    nondisability determination.") (citations and internal quotation marks

5    omitted); <u>Hart v. Astrue</u>, 349 Fed. Appx. 175, 177 (9th Cir. 2009)

6    (same); <u>Tyler v. Astrue</u>, 2010 WL 2135360, *8 (C.D. Cal.) ("[T]o the

7    extent the ALJ failed expressly to address statements from [lay

8    witnesses] that simply corroborated limitations the ALJ already

9    accounted for in her decision, any error was harmless.").

10

11       **3.  Mother:**

12       The plaintiff also complains the ALJ did not properly consider

13   her mother's testimony from both administrative hearings.  At the

14   first administrative hearing, Mrs. Augustine stated plaintiff has been

15   diagnosed with ADHD, depression, and reduced cognitive functioning,

16   plaintiff does not get along with other children, fights with them and

17   tries to hurt them when she's depressed, and plaintiff tries to hurt

18   herself by stabbing herself with a pencil, and can never be left

19   alone.  A.R. 164-75.  At the time, Mrs. Augustine also stated

20   plaintiff had not improved since she began receiving mental health

21   treatment.  A.R. 168.  At the second administrative hearing, Mrs.

22   Augustine testified plaintiff's depression has worsened, she does not

23   get along with other children and tries to hurt them, and she

24   sometimes tries to hurt herself by stabbing herself with pencils or

25   taking extra medication.  A.R. 351-63.  Mrs. Augustine also stated

26   plaintiff is now in special education in the sixth grade, and she has

27   _____

28   above, his opinion supports the ALJ's conclusion plaintiff is not
     disabled.  A.R. 317-22.

1  never been held back.  A.R. 351-52, 359-60.

2

3      Plaintiff contends "the ALJ failed to discuss or even mention

4  [Mrs. Augustine's] testimony[,]" Jt. Stip. at 11:13-12:16, 13:9-19,

5  but this is incorrect.  To the contrary, the ALJ specifically

6  discussed Mrs. Augustine's testimony in both of his decisions,[5]

7  concluding it "is consistent with [the ALJ's] findings" that plaintiff

8  has a severe mental impairment, but not a disabling one.  A.R. 16,

9  183.  Here, plaintiff has not shown the ALJ's assessment is in any

10 manner incorrect.  Johnson v. Astrue, 303 Fed. Appx. 543, 545 (9th

11 Cir. 2008); see also Vick v. Comm'r of the Soc. Sec. Admin., 57

12 F. Supp. 2d 1077, 1086 (D. Or. 1999) (ALJ properly considered lay

13 testimony, and "was not required to explain his assessment of it any

14 further" when he recited the testimony and "the ALJ's determination

15 [was] not inconsistent with [it]. . . ."), affirmed by, 5 Fed. Appx.

16 781 (9th Cir. 2001).

17 //

18 //

19 //

20 //

21

22      [5]  An ALJ may, as he did here, A.R. 179, incorporate by

23 reference an earlier decision evaluating the evidence.  See,
   e.g., Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001)

24 ("Although [ALJ] Kelly did not specifically address Dr. Dawson's
   opinion, she incorporated by reference ALJ Bernoski's discussions

25 of the medical evidence[,]" which was supported by substantial

26 evidence.); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 n. 10
   (C.D. Cal. 2006) ("The ALJ made no Step Three finding on remand,

27 but he incorporated by reference his earlier opinion in which he
   found plaintiff's condition does not meet or equal a listed

28 impairment.").

15

1    For these reasons, there is no merit to plaintiff's claims, and

2    plaintiff's request for relief should be denied.

3

4                              **ORDER**

5    IT IS ORDERED that: (1) plaintiff's request for relief is denied;

6    and (2) the Commissioner's decision is affirmed, and Judgment shall be

7    entered in favor of defendant.

8

9    DATE: August 2, 2010              /S/ ROSALYN M. CHAPMAN
                                        ROSALYN M. CHAPMAN
10                                      UNITED STATES MAGISTRATE JUDGE

11   R&R-MDO\09-0974.mdo
     8/2/10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28